# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA M. SWEENEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-124-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Lisa M. Sweeney requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 26, 1973, and was thirty-eight years old at the time of the administrative hearing (Tr. 39, 132). She graduated high school and earned a CNA certificate, and has worked as a door assembler and resident aide (Tr. 29, 158). The claimant alleges inability to work since July 3, 2007, due to type II diabetes, chronic hepatitis C, depression, obesity, high blood pressure, asthma, anxiety, and panic attacks (Tr. 151).

## Procedural History

On November 13, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 12, 2011 (Tr. 18-29). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the ability to perform a wide range of medium work, as defined in 20

C.F.R. §§ 404.1567, 416.967, *i. e.*, she could lift/carry fifty pounds occasionally and 25 pound frequently, but with the additional limitation of not working in environments that involve concentrated exposure to dust and fumes (Tr. 22). Additionally, he noted that if she could perform medium work, she could also perform light and sedentary work (Tr. 22). The ALJ concluded that the claimant was therefore able to return to her past relevant work as a door assembler or resident aide (Tr. 29).

**Review**

The claimant contends that the ALJ erred: (i) by failing to identify her mental impairments of depression and anxiety, as well as her hepatitis C, as severe; (ii) by failing to properly assess her RFC; and (iii) by erroneously finding that she could return to her past relevant work. The undersigned Magistrate Judge finds the claimant's second contention persuasive.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, migraine headaches, asthma, and osteoarthritis, but that her depression, anxiety, hypertension and high blood pressure, reports of chest pain, and hepatitis C were nonsevere (Tr. 20-22). The medical evidence relevant to this appeal reflects that the claimant was treated regularly at the Health and Wellness Center Sequoyah County, in Sallisaw, Oklahoma and the Stigler Health & Wellness Center. Notes reflect diagnoses of diabetes, a depressive disorder not otherwise specified, hypertension, and hepatitis C (Tr. 307-325, 404-407, 478-573). The claimant tested with elevated liver enzymes and hepatitis C antibody was positive, but never actually had a PCR or Geno type. She began

treatment for hepatitis C, but it was discontinued until it could be confirmed through the proper testing (Tr. 410-411). The records do not reflect that the testing was ever completed.

Dr. Terry Hoyt completed a physical RFC assessment of the claimant, finding that she could sit/stand/walk for no more than twenty minutes at a time in an eight-hour workday, and that she could only sit/stand/walk for one hour total during an eight-hour workday (Tr. 583). He further indicated that she would need rest breaks at hourly intervals and to alternate sitting and standing every fifteen minutes (Tr. 583). As to lifting and carrying, he indicated she could frequently do so up to five pounds, occasionally up to ten pounds, and rarely up to twenty pounds, but never over twenty pounds (Tr. 583-584). Further, he stated that the claimant was limited in the use of leg or foot controls and that her legs would need to be elevated when she was seated (Tr. 584). He noted a number of limits as to her upper extremities, and indicated she could rarely bend, squat, crouch, climb stairs and ramps, and never crawl, stoop, kneel, balance, climb ladders or scaffolds (Tr. 584-585). He indicated she needed to completely avoid near hazardous conditions and handling vibrating tools, and had marked restrictions related to exposure to extremes, respiratory irritants, and high noise levels (Tr. 585). In support, he noted that the claimant was "[o]bese, very poor physical conditioning with polyarthralgias degenerative joint changes, uncontrolled type 2 diabetes mellitus with secondary complications based on today's examination (Tr. 585). He remarked that the claimant was "in state of obvious physical decline. Patient needs neurological and

ophthalmology workup but states can't afford. Patient at risk of irreversible damage to eyes and nervous system" (Tr. 585).

Dr. Tracy Carney completed a physical consultative examination of the claimant on March 13, 2010. She assessed the claimant with diabetes mellitus type 2 uncontrolled, hepatitis C by history, mild intermittent asthma by history, polyarthralgias probably musculoskeletal in origin versus osteoarthritis in light of her history of uncontrolled diabetes, morbid obesity, depression and anxiety and panic attacks, and tobacco abuse (Tr. 350-351). A state reviewing physician found the claimant could perform medium work, but must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 394, 397).

Diane Brandmiller, Ph.D., completed a mental status examination of the claimant on February 24, 2010 (Tr. 343). Dr. Brandmiller's impression was that the claimant had major depressive disorder, single episode, moderate, as well as hepatitis C, diabetes, high blood pressure, obesity, and asthma (Tr. 346). Dr. Brandmiller noted the claimant's long-term memory appeared intact and she had no trouble describing personal historical information, that her short-term memory and concentration appeared intact, that her abstract thinking was slightly impaired, and that she appeared able to understand and carry out simple instructions (Tr. 346). A state reviewing physician then found the claimant had mild degrees of limitation in the areas of functional limitation, and no episodes of decompensation (Tr. 367).

The claimant's attorney sent her for another psychological evaluation, conducted by Robert Spray, Ph.D. He noted she appeared to have an IQ in the borderline or low average range, and that she seemed to have problems with short-term memory and delayed recall (Tr. 603). He described her speech as pressed, tangential, circumstantial, and somatically preoccupied (Tr. 603). He assessed her with major depression, somatoform disorder NOS, and personality disorder, NOS with histrionic, dependent, and hypochondrical features (Tr. 604).

At the administrative hearing, the claimant testified that she had pain in her joints, ankles, knees, wrists, back, and neck, and also pain from hepatitis C (Tr. 42-43). Additionally, she testified that she gets migraines four times a week, lasting three hours at a time (Tr. 43). She testified that she had neuropathy, and eyesight problems including blurred vision and sensitivity to bright lights (Tr. 43-44). She says that she experiences shortness of breath due to walking, panic attacks, and asthma (Tr. 45-46, 50-51). She said that her hobbies included watching television and occasionally attending church with her mother, but that she cannot sit for an entire service because she would need to stand or use the restroom (Tr. 46). As to her mental impairments, she admitted to thoughts of suicide, but stated she had never attempted to do so. Physically, she estimated she could stand without leaning for approximately fifteen minutes, and that she could walk fifty yards before needing to stop and rest (Tr. 48). She said she has trouble bending, squatting, and climbing stairs, as well as picking things up with her left (dominant) hand (Tr. 48-49).

In his written opinion, the ALJ summarized the claimant's hearing testimony and a majority of the medical evidence. He noted Dr. Hoyt's and Dr. Spray's assessments, but rejected them. He found that Dr. Hoyt was not a treating source and therefore not entitled to controlling weight, and that his statement was not an objective medical opinion but rather an opinion as to the claimant's motivation to return to work (Tr. 26). As to Dr. Spray, the ALJ found it was not based on a longitudinal assessment, it was not supported by objective medical evidence, and was, along with Dr. Hoyt's opinion, a "parroting back" of the claimant's subjective allegations (Tr. 27). He discussed the claimant's treatment records and diabetes, asthma, and hepatitis C individually, found her not credible, and therefore determined she was not disabled (Tr. 27-29).

The claimant argues that the ALJ erred in failing to classify her depression, anxiety, and hepatitis C as severe impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and

proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two the ALJ failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

The ALJ compounded his error when he engaged in improper analysis related to the claimant's pain (and the combined effects). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven

-9-

impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). In this case, the claimant's severe impairments of migraine headaches and osteoarthritis are pain-producing impairments, and the ALJ was therefore obliged to consider her allegations of pain as set out in *Musgrave*, but he provided no such analysis. *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

Because the ALJ failed to evaluate the effect of *all* the claimant's impairments or properly account for the claimant's pain in drafting his RFC at step four, and further failed to properly address the Third Party Function Report contained in the record, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**